**2023-1934**

# United States Court of Appeals for the Federal Circuit

LYNK LABS, INC.,

*Appellant,*

*v.*

SAMSUNG ELECTRONICS CO., LTD.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, the Patent Trial and Appeal Board in Case No. IPR2021-01300.*

**BRIEF FOR APPELLEE
SAMSUNG ELECTRONICS CO., LTD.**

NAVEEN MODI
JOSEPH E. PALYS
IGOR V. TIMOFEYEV
DAVID M. VALENTE
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
(202) 551-1700

*Counsel for Appellee*

December 18, 2023

# REPRESENTATIVE CLAIMS AT ISSUE

## U.S. Patent No. 11,019,697

**Claim 1:**

1.     An apparatus comprising:

at least one LED;

a semiconductor device configured to emit a laser;

a data receiver including an antenna, wherein the data receiver is configured to transmit and receive data;

a circuit configured to detect human touch via capacitive sensing;

a battery ground capacitively coupled to at least one of the data receiver, the circuit, the at least one LED, or the semiconductor device via a conductor,

wherein the apparatus is portable, and

wherein the at least one LED, the semiconductor device, the data receiver, the circuit, and the battery ground are contained within a package and connected to at least one circuit board within the package.

**Claim 7:**

7.     An apparatus comprising:

an LED circuit comprising at least one LED;

a first transmission conductor configured to receive first power and first data;

a second transmission conductor configured to wirelessly receive second power and second data from an alternating electromagnetic field;

at least one data receiver configured to receive the first and second data

respectively from the first and second transmission conductor, or receive third data via an antenna; and

a battery ground capacitively coupled to at least one of the at least one data receiver, the LED circuit, the first transmission conductor, or the second transmission conductor via a conductor,

wherein the apparatus is portable, and

wherein the LED circuit, the first transmission conductor, the second transmission conductor, the at least one data receiver, and the battery ground are contained within a package and connected to at least one circuit board within the package.

**Claim 14:**

14.    An apparatus comprising:

an LED circuit comprising at least one LED;

a transmission conductor configured to wirelessly receive power and data from an alternating electromagnetic field;

a data receiver configured to receive the data from at least one of the transmission conductor or an antenna;

a battery ground capacitively coupled to at least one of the data receiver, the transmission conductor, or the LED circuit via a conductor,

wherein the apparatus is portable, and

wherein the LED circuit, the transmission conductor, the at least one data receiver, and the battery ground are connected to at least one circuit board within a package.

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Appellee

Samsung Electronics Co., Ltd. ("Samsung") certify as follows:

1.     The full names of all entities represented by undersigned counsel in this case:

**Samsung Electronics Co., Ltd.**

2.     The full names of all real parties in interest for the entities:

**Samsung Electronics America, Inc.**

3.     The full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities:

**None.**

4.     List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities and have not already entered an appearance in this court.

**Paul Hastings LLP: Paul Anderson, Howard Herr, Arvind Jairam***

***No longer with the firm**

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

***Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. v. Lynk Labs, Inc.*, Case No. 1:21-cv-02665 (N.D. Ill.)**

***Lynk Labs, Inc. v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, Case No. 1:21-cv-05126 (N.D. Ill.)**

6.    Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

**Not applicable**.


Date:  December 18, 2023                    By: */s/ Naveen Modi*
                                                   Naveen Modi
                                                   *Counsel for Appellee*
                                                   *Samsung Electronics Co., Ltd.*

iv

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES ....................................................x

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE ............................................................2

I.      THE TECHNOLOGY AT ISSUE ...............................................2

II.     THE '697 PATENT ......................................................................4

III.    PRIOR ART .................................................................................4

    A.      Oba ......................................................................................4

    B.      Hara ....................................................................................8

    C.      Zhang ..................................................................................8

IV.     PROCEDURAL HISTORY .......................................................10

    A.      The Proceeding Below ......................................................10

    B.      The Board's Final Written Decision ................................10

    C.      The Present Appeal ..........................................................13

SUMMARY OF ARGUMENT.........................................................13

ARGUMENT ....................................................................................18

I.      STANDARD OF REVIEW........................................................18

II.     SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
    FINDING THAT THE PRIOR ART DISCLOSES THE
    CAPACTIVELY-COUPLED BATTERY GROUND LIMITATION .........18

    A.      The Board Correctly Found It Obvious to Modify Oba's System
        to Include a Capacitively-Coupled Battery Ground to Mitigate
        Against Noise and Provide Smoothed Power .....................19

        1.      The Board Found Samsung's Unrebutted Evidence
            Persuasive..................................................................20

2. *Hara*'s Teachings and Dr. Baker's Evidence-Backed Opinions Support the Board's Findings....................................22

3. Lynk's Remaining Arguments Are Unavailing........................30

B. The Board Correctly Found that the Modification of Oba in View of Hara Would Have Resulted in a Battery Ground Capacitively Coupled to the Claimed Components ...........................33

1. Substantial Evidence Supports the Finding that the Battery Ground Was Coupled to at Least One of the Components Required by Claim 1 .............................................36

2. The Board's Findings for Claim 1 Apply to Claims 7 and 14................................................................................................42

III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE PRIOR ART DISCLOSES THE "PACKAGE" LIMITATION .........................................................43

A. Lynk's Newly-Crafted Arguments for the "Package" Limitation Are Waived............................................................46

B. Substantial Evidence Supports the Board's Finding that Oba's Modified Laptop Is a "Package" .........................................49

1. The Board's Analysis Was Sufficiently Articulated ...............52

2. Lynk's Infringement Contentions Are Additional Evidence Supporting the Board's Finding that Oba's Laptop Constitutes a "Package"..................................................53

IV. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING AS TO THE FIRST TRANSMISSION CONDUCTOR LIMITATION.........................................................................57

A. The Oba-Zhang Combination Provides an Independent Basis to Affirm the Board's Decision .............................................58

B. The Board Properly Interpreted and Applied The "First Transmission Conductor" Features of Claim 7 to Find Oba's USB Interface Meets Limitation 7(c).................................61

C.    Substantial Evidence Supports the Board's Finding that Oba's USB Interfaces Were Known to be Configured to Receive Power and Data Over a Conductor......................................................64

CONCLUSION .........................................................................................68

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ..........................................................55

*Apple Inc. v. MPH Techs. Oy*,
   No. 2021-1387, 2022 WL 215129 (Fed. Cir. Jan. 25, 2022).................17, 46, 58

*Apple Inc. v. Samsung Elecs. Co.*,
   839 F.3d 1034 (Fed. Cir. 2016) (en banc) ........................................18

*Ariosa Diagnostics v. Verinata Health, Inc.*,
   805 F.3d 1359 (Fed. Cir. 2015) ...................................................40, 52

*Bradium Techs. LLC v. Iancu*,
   923 F.3d 1032 (Fed. Cir. 2019) ........................................................53

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006) ........................................................46

*DyStar Textilfarben GmbH & Co. Deutschland KG v.*
*C.H. Patrick Co.*,
   464 F.3d 1356 (Fed. Cir. 2006) ........................................................32

*In re Google Tech.*,
   980 F.3d 858 (Fed. Cir. 2020) ...................................................15, 43, 55

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ........................................................62

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
   977 F.3d 1212 (Fed. Cir. 2020) ........................................................18

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)........................................................................32

*In re NuVasive, Inc.*,
   841 F.3d 966 (Fed. Cir. 2016) ..........................................................42

*Orthopedic Equip. Co. v. United States*,
    702 F.2d 1005 (Fed. Cir. 1983) ............................................................. 61

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
    752 F. App'x 1017 (Fed. Cir. 2018) ................................................. 15, 46

*Polaris Indus. v. Arctic Cat, Inc.*,
    882 F.3d 1056 (2018) ............................................................................ 43

*Realtime Data v. Iancu*,
    912 F.3d 1368 (Fed. Cir. 2019) ............................................................. 18

*Redline Detection, LLC v. Star Envirotech, Inc.*,
    811 F.3d 435 (Fed. Cir. 2015) ............................................................... 45

*TQ Delta, LLC v. Cisco Systems, Inc.*,
    942 F.3d 1352 (Fed. Cir. 2019) ............................................... 22, 23, 42

*Unwired Planet, LLC v. Google Inc.*,
    841 F.3d 995 (Fed. Cir. 2016) ............................................................... 31

*In re Warsaw Orthopedic, Inc.*,
    832 F.3d 1327 (Fed. Cir. 2016) ..................................... 16, 28, 57, 67

*White v. Dunbar*,
    119 U.S. 47 (1886) ................................................................................ 55

## Rules and Regulations

37 C.F.R. § 42.64 ...................................................................................... 55

N.D. Ill. L.R. 3.4 ....................................................................................... 57

## STATEMENT OF RELATED CASES

This is an appeal from Patent Trial and Appeal Board's ("the Board's") final written decision in an *inter partes* review IPR2021-01300 involving U.S. Patent No. 11,019,697 (the "'697 Patent"). On July 12, 2023, the Court designated this appeal and Appeal No. 23-1935 as companion cases to be assigned to the same merits panel. On December 13, 2023, this Court designated another appeal, Appeal No. 23-2346, as an additional companion case, with all three appeals assigned to the same merits panel. Appeal No. 23-1935 arises from IPR2021-01347, and involves the same parties, Appellant Lynk Labs, Inc. ("Lynk") and Appellee Samsung Electronics Co., Ltd. ("Samsung"), and a related patent, U.S. Patent No. 10,966,298 (the "'298 patent"). Appeal No. 23-2346 arises from IPR2022-00149 and also involves the same parties (Lynk and Samsung) and another related patent, U.S. Patent No. 10,687,400 (the "'400 patent").

This appeal was originally consolidated with Appeal No. 23-1897, which arose from IPR2021-01299 and involved the same parties and a related patent, U.S. Patent No. 10,506,674 (the "'674 patent"). On July 11, 2023, this Court granted Lynk's unopposed motion to voluntarily dismiss Appeal No. 23-1897.

The '697 patent is presently at issue in *Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. v. Lynk Labs, Inc.*, No. 1:21-cv-02665 (N.D. Ill.), and *Lynk Labs, Inc. v. Samsung Electronics Co., Ltd. and Samsung Electronics*

*America, Inc.*, No. 1:21-cv-05126 (N.D. Ill.).   Those cases are stayed pending

resolution of the *inter partes* review proceeding that is on appeal here and additional

*inter partes* review proceedings involving related patents, including resolution of

any appeals from those proceedings to this Court.

In addition to the '697 patent, the following related patents are also at issue in

the above-referenced district court cases: U.S. Patent Nos. 10,492,251 (the "'251

patent"); 10,492,252 (the "'252 patent"); 10,499,466 (the "'466 patent"); 10,750,583

(the "'583 patent"); 10,154,551 (the "'551 patent");  10,652,979 (the "'979 patent");

the '674 patent; the '298 patent, and the '400 patent.   These patents were involved

in the following *inter partes* review proceedings: IPR2022-00051, IPR2022-00052,

and IPR2021-01369 (the '251 patent); IPR2021-01345 (the '252 patent); IPR2021-

01347 (the '298 patent); IPR2022-00149 and IPR2022-00150 (the '400 patent);

IPR2021-01346 (the '466 patent); IPR2021-01299 (the '674 patent); IPR2022-

00100 and IPR2022-00101 (the '583 patent); IPR2021-01575 and IPR2021-01367

(the '551 patent); IPR2021-01576 (the '979 patent).   The Board issued final

decisions in all of these proceedings.

The Board's final decisions involving the '251, '252, '466, '583, and '551

patents were not appealed.   In addition to the two appeals described above, the

Board's decision in IPR2021-01576 (involving the '979 patent) was appealed to this

Court as Appeal Nos. 23-2088 (lead appeal) and 23-2128 (cross-appeal). These appeals were voluntarily dismissed on September 11, 2023.

## INTRODUCTION

Lynk raises a myriad of challenges to the Board's unpatentability finding related to three claim limitations recited in independent claims 1, 7, and 14. Lynk contends, among other things, that there was no motivation to combine the prior art, that Samsung, its expert Dr. R. Jacob Baker, and the Board were improperly conclusory, that the Board adopted incorrect claim constructions, and that the Board should have found Lynk's evidence more persuasive than Samsung's evidence. Each of these arguments fails and thus the Board was correct to find all challenged claims (1-22) unpatentable.

As to the capacitively-coupled battery ground limitation, Lynk reargues many of the factual disputes it raised below, on which the Board's findings are entitled to significant deference. Ultimately, the Board found persuasive the *uncontroverted* and evidence-backed testimony of Dr. Baker that a person of ordinary skill would have configured the modified Oba laptop computer to include a capacitor coupled between the circuit components and battery ground to smooth power delivery to those components.

Lynk's contention that the Board improperly construed the other two limitations at issue ("package" and "first transmission conductor") comes too late. Lynk, Samsung, and the Board agreed that no claim constructions were necessary,

and as a result no terms were construed. Lynk's newly framed claim construction arguments therefore necessarily fail.

Likewise, Lynk never addressed the evidence of its district court claim interpretations for the "package" claim limitation before the Board. Regardless, substantial evidence supports the Board's finding that Oba's laptop housing with its LED signal lights and (as modified) LED touch pad display is a "package," even under Lynk's contention that a package must be a component of an LED lighting device or system. The Board observed that this conclusion was consistent with Lynk's district court positions that a cell phone and smart watch are each a package.

For the "first transmission conductor" limitation, the Board found two independent reasons why it was met by the prior art. Lynk's arguments on both boil down to a request for this Court to reweigh the evidence already considered by the Board. These are factual disputes on which the Board's findings were amply supported by substantial—even undisputed—evidence, and thus should not be disturbed.

This Court should affirm the Board's well-reasoned decision.

## STATEMENT OF THE CASE

## I. THE TECHNOLOGY AT ISSUE

The '697 patent relates broadly to light emitting diodes ("LEDs"). Appx111 (1:59-60). LEDs were commonly used in various devices and applications,

including displays, colored lights, optical communication systems, and computer devices.  Appx764-765 ¶ 45.

LEDs are intrinsically DC-powered devices.  They pass current in one polarity and DC voltage sources can use resistors to limit that current.  Appx6454 [0004]; Appx765 ¶ 46.  But LEDs can also be powered by an AC voltage source, as long as a transformer (or rectifier) is used.  Appx6454 ¶ [0005]; Appx765-766 ¶¶ 46-47.  A transformer converts input electrical power from an AC source (such as the common U.S. household power of 120 volts) to a low voltage that approximates a DC power input.  Appx766-767 ¶¶ 47-48.

A person of ordinary skill in the art ("POSITA") understood that circuitry in portable devices receiving power from a battery and from external AC power sources included connections to ground, giving the circuit a reference node to which the voltage of other nodes in the circuitry can be expressed.  Appx8143-8144 ¶ 3; Appx851-857 ¶ 102; Appx7526-7527 (Figs. 1-2), Appx7545 (5:37-41, 6:21-26, 6:31-46).  Further, a POSITA was aware that AC power connected to such devices was known to produce noise, which can be mitigated through filtering provided by a capacitor designed to provide smoothed (noise-reduced) power.  Appx8143-8144 ¶ 3; Appx761; Appx766-767; Appx875-876 ¶¶ 41, 48, 108; Appx4035 (Fig. 1), Appx4037 (4:19-24) (capacitor to filter DC power); Appx3355-3356 (38-39, Fig. 3.21).

## II.    THE '697 PATENT

While the '697 patent specification purports to relate to LEDs, LED drivers, LED circuits, and specifically to AC driven LEDs (*e.g.*, Appx111 (1:59-62); Appx117 (13:36-14:2); Appx775 ¶ 56), the claims use broader language.[1]  For example, independent claims 1, 7, and 14 of the '697 patent each recites a "portable" "apparatus" and does not mention "AC driven LEDs."   Appx124 (28:14-28) (Claim 1), (28:40-60) (Claim 7); Appx125 (29:8-20) (Claim 14).  Indeed, the claims are broadly directed to a combination of known components and features, where an LED is one part of the compilation with, for example, a semiconductor device configured to emit a laser, a data receiver, a touch circuit, transmission conductor(s) for receiving power and data, or a battery ground.  Appx124 (28:14-28) (Claim 1), (28:40-60) (Claim 7); Appx125 (29:8-20) (Claim 14); Appx775-777 ¶¶ 56-58; Appx747-774 ¶¶ 22-55.

## III.    PRIOR ART

### A.    Oba

International patent application publication No. WO 03/009535 A1 ("Oba"; Appx6581-6797) discloses a portable communication device, such as personal (or

---

[1] *See, e.g.*, Appx112-115 (4:25-10:67) (identifying various embodiments directed to an LED device/system having various features); Appx116-124 (11:10-13:34) (Fig. 1-74); (14:3-27:39) (descriptions of numerous schematic diagrams corresponding to many different embodiments of devices and circuits that employ commonly known components, circuits, and features).

"notebook") computer 51.  Appx6665; Appx 6670; Appx6673; Appx6675 (Figs. 6, 11, 14, 16); Appx6600-6609 (17:22-19:13, 20:9-26:8).  Oba's notebook computer 51 is "basically formed of body 61 and display block 62 which can be opened and closed against the body 61." Appx6602 (19:3-5); *see also* Appx6666 (Fig. 7).

**FIG. 6**



**FIG. 7**



**FIG. 11**



Appx6665-6666; Appx6670 (Figs. 6, 7, 11).

Oba's notebook 51 includes a battery 122 that provides power to the components. Appx6665; Appx6670 (Figs. 6, 11); Appx6608 (25:20-22). It also includes an AC power input. Appx6665 (Fig. 6). Both battery 122 and the AC power input are connected to power supply controller 121. Appx6608 (25:20-23).

Notebook computer 51 includes LED lamps, which illuminate to signal certain operations. Appx6602 (19:14-18 ("power lamp PL, a battery lamp BL, and, if necessary, other LED lamps such as a message lamp ML")); Appx6666 (Fig. 7) (shown above with "BL" and "PL" in display 66). Computer 51 also includes a universal serial bus ("USB") connector and USB port. Appx6670 (Fig. 11 (111, 115)); Appx6605-6606 (22:23-23:10); Appx6630 (47:21-24).

The notebook computer also includes a touch pad/panel 65 to facilitate input to control operations of computer 51. Appx6670 (Fig. 11); Appx6602 (19:9-12, 19:25-20:2); Appx6607 (24:6-13); Appx6608 (25:6-8, 25:12-19).



Appx6670 (Fig. 11) (excerpted/annotated).

## B.    Hara

U.S. Patent No. 6,600,243 ("Hara"; Appx6260-6278) discloses the known concept of providing a capacitor between a battery ground and electronic circuits of a portable device for filtering noise.    Appx6260 (Abstract); Appx6261-6262; Appx6264; Appx6271 (Figs. 1-3, 7-8, 18); Appx6274 (2:9-21, 2:24-34, 2:39-42); Appx6275 (3:54-65, 4:8-57); Appx6276 (5:9-33, 5:65-6:2); Appx6277 (7:10-36). Hara describes various ways to implement such a capacitor in context of a notebook computer arrangement.  Appx6275 (3:41-65, 4:8-29); Appx6276-6277 (6:65-7:36).

## C.    Zhang

U.S. Patent Application Publication No. 2002/0080010 ("Zhang"; Appx7793-7800) discloses a "multi-point computer networking system for transmitting data over power lines" (i.e., enabling receipt of both power and data over the power conductor).  Appx7793 (Abstract); Appx7798 [0007]; Appx7800 (claims 1, 2, 9) ("single connector for conducting DC power and system data to the computer device").  For example, Zhang discloses an arrangement with "reduced wire count" where a DC power and data modulator/demodulator is provided within the computer device 2 that connects to a power network module 1 over a conductor 17, as shown in Fig. 2B (below).  Appx7799 [0019].



FIG. 2B

Appx7796 (Fig. 2B) (annotated to show conductor 17 extending into computer device 2 (red)). "Alternatively, as shown in FIG. 1B, the cable 17 may carry both DC power and data to an appropriately configured port in the computer device." Appx7798-7799 [0017].



FIG. 1B

Appx7794 (Fig. 1B).

## IV.    PROCEDURAL HISTORY

### A.    The Proceeding Below

Samsung requested *inter partes* review of claims 1-22 of the '697 patent. Appx139-141.  The Board instituted review.  Appx285-313.  The Board noted that "[n]either party contends any terms of the '697 patent require construction," and that "no terms require construction."  Appx291.

### B.    The Board's Final Written Decision

The Board's final written decision found all challenged claims 1-22 of the '697 patent unpatentable over Oba, in combination with other asserted references. Appx52-53.  The Board again observed that "[n]either party contends any terms of the '697 patent require construction," and concluded that "no terms require construction."  Appx8 (citations omitted).

Turning to the capacitively-coupled battery ground limitations, the Board found that Hara disclosed "a direct electrical connection between the negative or positive pole of the battery, the circuit components of the laptop computer, and the capacitor coupled to the battery ground."  Appx17 (citing Appx156-157; Appx6261-6262; Appx6264 (Figs.1, 3, 8); Appx6274 (1:52-67); Appx6276 (5:20-33)).  The Board agreed with Samsung that "Hara teaches or suggests capacitively coupling the battery ground and the circuit components of the laptop computer."  Appx17. Relying on uncontroverted testimony from Samsung's expert that a such capacitive

coupling between a battery ground and Oba's circuit components would "smooth delivered power," thereby "facilitating a steady supply of power," the Board found that a POSITA would have sought to combine Oba and Hara to arrive at a battery ground that is capacitively coupled to the circuit components of the laptop computer. Appx18-19 (citing Appx851-876 ¶¶ 102-106, 108; Appx8143-8152 ¶¶ 3-10; Appx452; Appx156-157). The Board rejected Lynk's contrary arguments, explaining that the "capacitive-coupling to battery ground … need not be used in Oba to solve the same problem identified in Hara." Appx18-19. The Board relied on this analysis for the similar claim features in claims 7 and 14. Appx35 n.11; Appx42.

For the "package" limitations in claims 1, 7, and 14, the Board recognized that the field of LED lighting systems in context of the '697 patent is broad, and explained that it includes "'general lighting, specialty lighting, signs, and decoration such as for Christmas tree lighting.'" Appx24 (quoting Appx111 (2:8-11)). It also observed that "[c]onsistent with the broad understanding of the field of 'LED lighting,' [Lynk] asserts in the district court litigation that a cell phone, tablet, and watch constitute a 'package.'" Appx24 (citing Appx7821 ¶ 30; Appx8093; Appx8111-8112; Appx8129-8130; Appx8136-8137 (5, 23–24, 41–42, 48–49); Appx464-465). Having found that the Oba laptop (including as modified) had "at

least one LED," Appx22-23, the Board concluded that Oba's laptop constitutes a "package," Appx24.

Turning to the "first transmission conductor" feature of claim 7, the Board found unpersuasive Lynk's argument regarding Oba's USB interface components. Appx42-43. Crediting Samsung's evidence, the Board explained that if Oba's USB interface is connected to a "host" (e.g., desktop PC), the USB interface would receive power and data and thus be a "first transmission conductor configured to receive first power and first data" as recited in claim 7. Appx43. The Board also rejected Lynk's argument that the claimed "first transmission conductor" is required to "actually receive" power and data, since claim 7's plain language requires only that the conductor be "configured to receive" first power and data. Appx44.

The Board ruled that a POSITA would have found it obvious to configure Oba's laptop with a single-conductor configured to receive power and data, as taught by Zhang. Appx45-46. Namely, a POSITA would have recognized a benefit to adding such features in Oba, as Zhang taught that the use of the power line to deliver both power and data is particularly advantageous. Appx45-46 (citing Appx7798 [0003], [0008]). Finally, the Board found unpersuasive Lynk's general arguments that Zhang's single-cord embodiment would "increase the costs and complexity of the laptop computer." Appx46.

## C.    The Present Appeal

Lynk appealed the Board's decision. Appx684-689. Lynk's appeal focuses on three claim features addressed by the Board: (1) the capacitively-coupled battery ground limitations of claims 1, 7, and 14; (2) the "package" limitation in those claims; and (3) and the "first transmission conductor" limitation of claim 7. Lynk Br. 3-4.[2]

## SUMMARY OF ARGUMENT

**1.** Lynk contends the Board's analysis of the capacitively-coupled battery ground limitations of claims 1, 7, and 14 was in error because (1) Oba does not disclose the standing wave/antenna noise problem addressed by Hara (Lynk Br. 25), and (2) the Board did not sufficiently articulate how the Oba-Hara combination meets the requirement that particular claimed circuits are capacitively coupled to the battery ground, nor did Samsung provide evidence supporting that finding (Lynk Br. 30).

---

[2] These features were addressed by the parties below. *See e.g.*, Appx156-159; Appx182; Appx208; Appx761; Appx851-876; Appx926-927; Appx966-967 ¶¶ 41, 102-108, 148, 183; and Appx451-458 (discussing the claimed capacitively-coupled battery ground limitations); Appx160 n.14 (citing Appx7812-7823; Appx7965-8031; Appx7913-7964; Appx8089-8137); and Appx464-466 (citing *inter alia* Appx8385-8432) (discussing "package" limitations); Appx197-203; and Appx473-480 (discussing "first transmission conductor" limitation). *See also* Appx381-387; Appx399-400; Appx410; Appx414-433; Appx531-539; Appx547-553.

As the Board correctly recognized, "capacitive-coupling to battery ground …
need not be used in Oba to solve the same problem identified in Hara." Appx18-19.
In accordance with Dr. Baker's uncontroverted testimony, the Board found that
capacitive coupling to battery ground would act as a noise filter and *smooth delivered
power* to the Oba PC's components.    Appx18-19.    Lynk never rebutted the
smoothing benefits of such capacitive coupling, and therefore the Board was correct
to rely on this substantial evidence of motivation to combine.

The Board's decision that it would have been obvious to capacitively couple
at least one of "the circuit components" (i.e., the specific claimed circuit
components) to Oba's battery ground (Appx18) was the result of a careful step-by-
step analysis that Lynk ignores when arguing the Board failed to address this
limitation (Appx14-19; Lynk Br. 30-31).    The Board's findings were supported by
substantial evidence, including Dr. Baker's testimony regarding the reasons for
capacitively coupling all of the claimed components to battery ground (Appx869-
870 ¶ 104).

**2.** Lynk urges this Court to reverse because the claim term "package" in
claims 1, 7, and 14 should have been construed as defined in the specification
requiring that a package be a component of an "*LED lighting device or system.*"
Lynk Br. 43-44 (quoting Appx113 (5:46-50)).    This argument fails for multiple
reasons.

*First*, Lynk focuses on a purported claim construction dispute, but it never sought a construction from the Board. *See* Appx374; Appx8. Having failed to specifically raise its lexicography based argument below, Lynk's argument is waived. *See In re Google Tech.*, 980 F.3d 858, 863 (Fed. Cir. 2020) (lexicography-based claim construction argument not made to the Board is waived on appeal); *Palo Alto Networks, Inc. v. Finjan, Inc.*, 752 F. App'x 1017, 1022 (Fed. Cir. 2018).

*Second*, the Board's analysis applied the meaning of "package" that Lynk now seeks as an express construction. *Compare* Appx24, *with* Lynk Br. 43. While Lynk quibbles with the Board looking to examples in the specification of LED lighting systems when assessing whether the prior art Oba laptop discloses a "package," Lynk does not explain how Oba's laptop (including as modified) fails to disclose a "package" under its proposed construction. Lynk Br. 42-50. Indeed, Lynk's only argument to the Board was a conclusory statement that Samsung failed to show Oba's laptop was an "an LED lighting device or system." Appx399. However, Lynk provided no explanation as to how Samsung allegedly failed to make that showing (Appx399), and does not even dispute the Board's finding that the combined Oba laptop has at least one LED as claimed (Appx22-23).

*Third*, the Board found Oba's laptop disclosed a package, and that finding was "consistent with" Lynk's infringement allegations in district court. Appx24. Lynk argues it was improper for the Board to consider its district court infringement

allegations, but it ignored Samsung's arguments about those allegations before the Board. Lynk Br. 46-50. Regardless, there is nothing improper about the Board considering Lynk's own representations about the scope of its claims to prevent Lynk from seeking inconsistent claim interpretations for infringement and invalidity, and its new arguments on appeal fail to demonstrate any error.

**3.** The Board found two independent reasons why the "first transmission conductor configured to receive first power and first data" limitation of claim 7 was met by the prior art. First, it found Oba's laptop includes a USB interface that was known to be configured to receive power and data. Appx42-44. Second, it found that in view of Zhang's disclosure of a single conductor for receiving both power and data, "one of ordinary skill in the art would have seen a benefit" to using a "single cord configuration in Oba." Appx44-47.

Lynk contends both findings were in error, but the heart of Lynk's challenge is a factual one. *See* Lynk Br. 53-62. That challenge must fail because the Board already considered the facts and found they weighed in favor of Samsung. Appx40-47. *See In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1334 (Fed. Cir. 2016) ("we may not reweigh facts already considered by the PTAB").

Seeking to avoid substantial evidence review on the Board's Oba-USB findings, Lynk recasts it as a claim construction error that "configured to receive" requires the conductor to be "designed to receive first power/first data" and not

16

"merely capable of receiving" or "capable of being configured to receive" such power and data.  Lynk Br. 52; Appx50-53.  This argument comes too late.  Lynk never presented the dispute to the Board as a claim construction issue, and thus the Board did not construe the claim term.  Instead, the Board applied the plain meaning of "configured to" in its analysis.  Appx44 ("first transmission conductor must only be *configured to* receive power and data").  Under similar circumstances, this Court has rejected attempts to recast factual arguments made to the Board as claim construction on appeal and should do so here.  *See, e.g.*, *Apple Inc. v. MPH Techs. Oy*, No. 2021-1387, 2022 WL 215129, at *4 (Fed. Cir. Jan. 25, 2022).  Even under its untimely claim construction, Lynk does not contend that the Oba-Zhang combination fails to render this claim term obvious, and thus the Court need not even reach this argument.

# ARGUMENT

## I.   STANDARD OF REVIEW

Obviousness is a question of law based on underlying facts.  *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1047 (Fed. Cir. 2016) (en banc).  "What the prior art teaches … [is a] question[] of fact."  *Id.* at 1051.  This Court reviews the Board's claim construction *de novo* and any underlying factual findings for substantial evidence.  *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1217–18 (Fed. Cir. 2020).  "The Board is required to construe only those terms ... that are in controversy, and only to the extent necessary to resolve the controversy."  *Realtime Data v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

## II.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE PRIOR ART DISCLOSES THE CAPACTIVELY-COUPLED BATTERY GROUND LIMITATION

Lynk contends primarily that Oba does not have the same standing-wave noise problem that Hara intends to solve with its capacitively-coupled battery ground. Lynk Br. 22-25.  The Board already considered that argument and nevertheless found the battery ground claim limitations in claims 1, 7, and 14 obvious. Substantial evidence supports this finding.

With regard to the Board's analysis of the coupling limitation, Lynk concedes that "Hara teaches a capacitor-connected battery ground," Lynk Br. 24, and that both Hara and Oba are directed at laptop PCs, Lynk Br. 10-11.  The focus of Lynk's

appeal is thus relatively narrow: 1) whether Oba must explicitly disclose "the standing wave/antenna noise radiation problem addressed by Hara" to be combined with Hara (Lynk Br. 25); and 2) whether the Board erred by failing to address the requirement that one or more of the circuit components recited in the claims must be capacitively-coupled to the battery ground (Lynk Br. 31). The Board correctly analyzed Lynk's arguments, and ultimately credited Samsung's unrebutted evidence (including that capacitive coupling to ground would "smooth delivered power") to find that "one of ordinary skill in the art would have sought to combine Oba and Hara to arrive at a battery ground that is capacitively coupled to the circuit components of [Oba's] laptop computer," including at least one of the specific circuit components recited in claims 1, 7, and 14. Appx18-19. Lynk's attempt to reweigh the evidence should be rejected.

### A.    The Board Correctly Found It Obvious to Modify Oba's System to Include a Capacitively-Coupled Battery Ground to Mitigate Against Noise and Provide Smoothed Power

The Board found persuasive the *uncontroverted* testimony of Samsung's expert, Dr. Baker, that coupling a capacitor to Oba's battery ground (like that taught by Hara) would serve as a noise filter and *smooth delivered power* to the Oba PC's components. Appx17-19 (citing Appx869-874 ¶¶ 104–106). The Board noted that the capacitive coupling to battery ground need not be used in Oba to solve the same standing wave noise problem identified in Hara. Appx18-19. As it did below with

the petition, Lynk ignores the smoothing aspects of the Board's obviousness analysis (*see infra* §II.A.1; Appx158-159; Appx381-388),[3] acknowledging it only in a single footnote but for different purposes (*see* Lynk Br. 39 n.10; *infra* §II.B).

At bottom, Lynk asks this Court to reverse the undisputed factual findings underpinning the Board's conclusion that it would have been obvious to apply a known technique for noise filtering in one laptop PC to filter noise and smooth power delivery to the components of another laptop PC. These findings, however, are supported by substantial evidence.

### 1. The Board Found Samsung's Unrebutted Evidence Persuasive

The Board considered and credited Dr. Baker's uncontroverted testimony that

> (1) Oba's laptop computer necessarily has a battery ground (Ex. 1002 ¶ 102); (2) it was known in the art, for example as disclosed in Hara, that a capacitor could be coupled between a battery ground and the circuit elements powered by the device in order to serve as a filter for noise (*id.* ¶¶ 103, 108; Ex. 1090 ¶ 3 (asserting that AC power is a known source of noise)); and (3) capacitively coupling Oba's battery ground to the conductor connecting the battery poles and the circuit components of the laptop computer would "*smooth delivered power*," thereby "facilitating a steady supply of power" (Appx869-874 ¶¶ 104–106).

---

[3] Samsung pointed out Lynk's silence below. *See* Appx158-159; Appx451-452; Appx603 (35:18-36:16).

Appx18 (emphasis added).

Relying on this testimony (and other record evidence) the Board found that "Dr. Baker persuasively explains why the system of Oba would benefit from a capacitive coupling to battery ground." Appx18-19 (citing Appx452; Appx156-157; Appx857-870 ¶¶ 103–104; Appx8143-8152 ¶¶ 3–10). As such, the Board concluded that a POSITA "would have sought to combine Oba and Hara to arrive at a battery ground that is capacitively coupled to the circuit components of the laptop computer." Appx19. Lynk failed to present evidence rebutting Dr. Baker's opinions (and supporting evidence from Hara and the state of the art) that a capacitively-coupled battery ground in Oba's modified laptop would provide smooth power to the components of the system to mitigate noise. *Compare* Appx156-159; Appx761; Appx851-876 ¶¶ 41, 102-108; Appx451-452; Appx8143-8144 ¶ 3, *with* Appx381-388; Appx531-539.

Instead of directly addressing the "smoothing" aspects of Samsung's obviousness positions, Lynk reiterates many of the same factual arguments the Board already rejected, namely that (1) Hara uses a capacitive coupling to battery ground only to avoid the problem of standing waves, (2) Oba's battery has little to no distance between it and the laptop's circuitry avoiding any standing wave issues, and (3) Oba is not concerned with standing waves noise. *See* Appx17-18 (citing Appx384-388); Lynk Br. 22-27. The Board noted Lynk's argument that Hara

discloses capacitive coupling to battery ground to mitigate standing wave issues, but explained that capacitive coupling to battery ground need not be used in Oba to solve that same problem. Appx18-19. Thus, it found the Oba laptop would benefit from a capacitive coupling to battery ground for the reasons explained by Dr. Baker's uncontroverted testimony, including smoothing power delivery and reducing noise. Appx18-19 (citing Appx452; Appx156-157; Appx857-870 ¶¶ 103-104); Appx8143-8152 ¶¶ 3-10).

### 2. *Hara*'s Teachings and Dr. Baker's Evidence-Backed Opinions Support the Board's Findings

To the extent Lynk addresses Dr. Baker's testimony at all, it incorrectly argues such testimony is conclusory and unreliable under *TQ Delta*. *See* Lynk Br. 28, 30 (citing *TQ Delta, LLC v. Cisco Systems, Inc.*, 942 F.3d 1352, 1357-58 (Fed. Cir. 2019)). Unlike in *TQ Delta* (*see* 942 F.3d at 1362), here, the Board's reliance on Hara's teachings and Dr. Baker's detailed testimony was corroborated by contemporaneous evidence supporting the Board's determination that implementing a capacitor between Oba's battery ground and one or more of the recited components as claimed would have been obvious. *See* Appx16-19; *see also* Appx457-458 (citing Appx8150-8152 ¶ 10 and Appx6274-6276 (1:28-47, 4:41-57, 5:20-33) to explain that Hara's configurations in Figures 3 and 8 "are consistent with *Hara*'s solutions to couple a capacitor to battery ground so that noise will not 'travel[] through the

power supply lines'").[4]  Dr. Baker's referenced opinions, discussed in detail below, were far from conclusory, and substantial evidence supports the Board's decision.

For starters, it is undisputed that a POSITA would have understood Oba to disclose a battery ground coupled to the laptop PC's components, as Dr. Baker explained.  Appx851-857 ¶ 102 (citing Oba (Appx6581-6797); Hara (Appx6260-6278); contemporaneous state of art evidence (Appx7525-7551); and Dr. Baker's opinions in Appx748-759 ¶¶ 24-39 (in turn citing, *e.g.*, Appx3324-3329; Appx3336-3337; Appx3342-3344)).

Dr. Baker explained how, in this context, a POSITA would have further recognized the desirability and advantages of capacitively coupling the Oba laptop's components to battery ground "given it was known to couple a capacitor between a ground and other circuit elements to serve as a filter, e.g., to smooth out delivered power."  Appx857-869 ¶ 103 (discussing Hara's multiple disclosures corroborating the known use of "providing a capacitor between a battery ground and electronic circuits of a portable device for filtering purposes"); *see also* Appx869-872 ¶¶ 104-105 (further discussing Hara (Appx6275 (3:41-65, 4:8-29), Appx6276-6277 (6:65-

---

[4] *TQ Delta* also concerns conclusory expert testimony on *conclusions*, such as whether a POSITA would have had a motivation to combine the prior art, not expert testimony (like Dr. Baker's) explaining well-known technical and scientific information that can be tested by cross-examination or rebuttal evidence.  *See* 942 F.3d at 1359-60.

7:36, 7:58-66), Appx6277 (8:33-38))).  The Board relied on these benefits to find the battery ground claim limitation obvious.  Appx16-19.

For instance, Hara discloses the known feature of providing a capacitor between a battery ground and electronic circuits of a portable device for filtering purposes, with Dr. Baker providing annotated figures from Hara showing the capacitor and ground.  Appx857-869 ¶ 103 (citing and discussing Hara (Appx6260 (Abstract); Appx6261-6262; Appx6264; Appx6271 (Figs. 1-3, 7-8, 17-18); Appx6274 (1:52-64, 2:9-21, 2:24-34, 2:39-42, 2:56-65); Appx6275 (3:41-65, 4:8-57); Appx6276-6277 (5:9-33, 5:65-6:2, 6:65-7:36, 7:10-36, 7:58-66); Appx6277 (8:33-38))); *see also* Appx874-875 ¶ 107 (explaining how Hara "informed a person of ordinary skill in the art that it was known to connect the ground of a notebook PC to a battery ground") (citing Hara (Appx6268 (Fig.14); Appx6276 (6:3-14))).  Beyond Hara, Dr. Baker cited contemporaneous evidence demonstrating that it was known in the art to use "capacitors for filtering purposes and power control functionalities, including in portable systems with battery ground configurations."  Appx872-874 ¶ 106 (citing Appx6291 (Fig. 4D2); Appx6306 (11:27-35, 11:60-62); Appx4035 (Fig. 1), Appx4037 (4:19-24)).  For instance, Dr. Baker provided the below examples of capacitors used to filter power to circuit components:



Appx872-874 ¶ 106 (annotating Appx6291 (Fig. 4D2)).



Appx872-874 ¶ 106 (annotating Appx4035 (Fig. 1)).

Dr. Baker's uncontroverted testimony confirmed that the AC power received by Oba's PC was a known source of noise that "would have been mitigated through filtering provided by a capacitor to promote the provision of smoothed (noise-

25

reduced) power, *consistent with that known in the art at the time*." Appx8143-8144 ¶ 3 (emphasis added); *see also* Appx8149-8150 ¶ 8. Dr. Baker supported that opinion by reference to his discussion of the technology background, which demonstrated a capacitor was known to smooth signals. Appx8149-8150 ¶ 8 (citing Appx761 ¶ 41 (discussing Appx3354-3356)).



**fig 3.21** *the bridge rectifier with smoothing capacitor; a large capacitor is used to provide power during the 'gaps' in the rectified waveform*

Appx3356 (39, Fig. 3.21).

Dr. Baker thus explained:

> A person of ordinary skill in the art would have thus had reasons and the ability to consider and implement workable circuit arrangements based on such teachings/suggestions from *Oba* and *Hara* (and state of the art) to configure *Oba's* computer to include a capacitor between a battery ground for *Oba*'s battery (e.g., 122) and the above-discussed computer components (limitations 1(b)-1(e)) to promote the provision of smoothed (noise reduced) power to those components.

Appx875-876 ¶ 108; *see also* Appx851-857 ¶ 102 (describing examples of such configurations as applied to the modified Oba laptop, where a capacitor would be coupled between battery ground and the components mapped to limitations 1(c)-1(e)); Appx869-870 ¶ 104. Lynk challenges this analysis on the basis that Oba's laptop can be used in a battery only mode in which AC power would not create noise at that time. Lynk Br. 29. This argument ignores that Oba's laptop includes *both* battery 122 *and* AC power connected to power supply control circuit 121 that interfaces with the laptop components, Appx6670 (Fig. 11), and allows the PC to *also* be used in an AC power mode and for charging the battery, Appx6608 (25:20-22). Thus, a skilled artisan would still be interested in addressing corresponding noise implications.

Lynk contends that the Board erred by not making an explicit factual finding that the power used in Oba's laptop is noisy. Lynk Br. 25-26, 28 n.6. This argument ignores the *unrebutted* evidence that a POSITA would have understood Oba's laptop (consistent with other systems coupled to AC power) would experience issues from noise that permeates from such a power source, and that using a capacitor coupled between Oba's laptop battery ground and other circuitry would have mitigated such

issues by smoothing the signals delivered to the laptop's components (including those mapped to limitations 1(c)-1(e), discussed *infra* § II.B).[5]

The record cited by the Board supports the understanding that Oba's AC power connection was known to cause noisy power. *See, e.g.*, Appx17-19 (citing Appx851-876 ¶¶ 102–106, 108; Appx8143-8152 ¶¶ 3-10). Lynk's main response is to nit-pick the phrasing used by Samsung's expert, incorrectly suggesting his statement that "the AC power connected to Oba's PC would have been known as a source of noise" was not an opinion that the AC power would actually cause Oba's battery to deliver noisy DC power. Lynk Br. 28-29 (citing Appx8143-8411 ¶ 3). But that is clear not only from Dr. Baker's statement but also from the context.[6] For example, Dr. Baker explained that such noise would have been mitigated through filtering provided by a capacitor, and cited his first declaration, which explains that a POSITA would have had reasons and the capability to "configure *Oba's* computer

---

[5] Lynk's assertion that Oba does not "mention any concern for noise or noise sources" or has a standing wave radiation problem (Lynk Br. 24-25) also conflicts with its admission that "[a] POSITA designing Oba's PC would understand that battery leads can act as a dipole antenna that can pick up noise emanating from the PC electronics, and then can radiate the noise to the outside environment." Appx533.

[6] Lynk also asks the Court to disregard Dr. Baker's opinion that AC power was a known source of noise because it "is a conclusory assertion unsupported by any evidence." Lynk Br. 28 n.8. Lynk's waived argument is improper. Lynk never disputed Dr. Baker's opinion on this issue below. Appx381-388, Appx531-539. Regardless, this Court "may not reweigh facts already considered by the PTAB." *In re Warsaw Orthopedic*, 832 F.3d at 1334.

to include a capacitor between a battery ground for *Oba*'s battery (e.g., 122) and the above-discussed computer components (limitations 1(b)-1(e)) to promote the provision of smoothed (noise reduced) power to those components." Appx875-876 ¶ 108[7]; *see also* Appx8143-8144 ¶ 3.

Dr. Baker also rebutted unsupported arguments of Lynk's expert that Oba's laptop would not have the standing wave noise issue of Hara because there is purportedly little to no distance between the battery and the laptop's circuitry. For instance, Dr. Baker described how, consistent with known laptop computers at the time, a POSITA would have understood components in Oba's PC 51 to have some distance between them and battery 122. Appx8144-8146 ¶ 4 (citing Appx8261-8263; Appx8300-8302 (Figs. 6-8A, 26:4-31, 27:7-37, 28:31-29:37, 29:28-37); Appx8356 [0002], [0006]). Dr. Baker demonstrated how the dimensions discussed in Hara were exemplary and how a POSITA would not have understood Hara's teachings to be limited to what Lynk perceived to be lengthy power-supply wires. Appx8146-8147 ¶ 5 (citing Appx6261-6266 (Figs. 2-11); Appx6274 (1:48-64); Appx6275-6276 (4:8-6:14)). Dr. Baker explained how battery supply connectors in Oba's notebook, even if shorter than exemplary distances in some of Hara's

---

[7] Dr. Baker continued with specific examples of couplings between the capacitively-coupled battery ground and the "data receiver" (limitation 1(c)), "touch detection circuit" (limitation 1(e)), "LED" (limitation 1(b)), and "semiconductor device" (limitation 1(c)). Appx875-876 ¶ 108.

embodiments, would still radiate noise as described in Hara, only at different frequencies (proportional to their length). Appx8150 ¶ 9. And Dr. Baker explained why Hara's teachings apply to conventional notebook computers like Oba, which Hara described as having the standing wave noise issue. Appx8143-8152 ¶¶ 3-10.[8] He also explained how a POSITA would have understood the wire length L55 in Figure 1 (Lynk Br. 24) was the same in the conventional notebook computer of Figure 12 that would "act[] as a source of potential noise." Appx8148-8149 ¶ 7.[9]

Dr. Baker's detailed and evidentiary-supported opinions provide sufficient support for the Board's findings underlying its conclusion that the claimed "capacitively coupled battery ground" limitation would have been obvious in view of Oba and Hara.

### 3. Lynk's Remaining Arguments Are Unavailing

Lynk's attempt to contort the Board's analysis into an inherency one is misplaced. Lynk Br. 26 (contending the Board's "premise" is that Oba's battery "inherently produces and delivers noisy DC power"). The Board did not supply a missing claim limitation that was inherent in the prior art, but rather relied on the

---

[8] Dr. Baker discussed how Hara discloses that the conventional notebook computer arrangement of Figure 12—on which Lynk relies both below and here (Lynk Br. 22-23)—actually shows how an internally mounted battery pack of a laptop computer (like that in Oba) can experience standing wave issues. Appx8148-8150 ¶¶ 7-8.

[9] Lynk did not cross-examine Dr. Baker on his reply declaration opinions or dispute his opinions on those issues in its sur-reply. Appx531-538.

evidence presented, including Dr. Baker's unrebutted testimony, demonstrating that Oba would benefit from reduced noise and smoothed power delivery. *See Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1004 (Fed. Cir. 2016) ("[S]ubstantial evidence exists if [a POSITA] could have seen the advantages of applying the teachings of [one reference] to improve [another]."). Hearing no dispute from Lynk that, for example, "the AC power connected to *Oba*'s PC would have been known as a source of noise" that "would have been mitigated through filtering providing by a capacitor," as Dr. Baker explained (Appx8143-8144 ¶ 3; Appx761; Appx875-876 ¶¶ 41, 108), the Board was correct to find persuasive Samsung's evidence and argument supporting obviousness.  Appx17-19.

Lynk's remaining arguments are simply other ways of framing its contention that Oba does not disclose that its battery has an issue with generating or delivering noisy DC power.  Lynk Br. 26-29.  But Lynk focused its efforts on convincing the Board that Hara's teachings were limited to standing wave issues for systems with external battery packs and long battery leads allegedly not applicable to Oba—each incorrect as demonstrated by Samsung.  *See supra* § II.A.2; Appx451-458; Appx8144-8152 ¶¶ 4-10.  Lynk never disputed that AC signals, like those provided in Oba's system, were a known source of noise.  Substantial evidence, including Dr. Baker's testimony, the teachings of Oba and Hara, and the contemporaneous state of art evidence, supports the Board's finding that Oba's laptop would benefit

31

from smoothing the power signals, *supra* § II.A.2, and thus supports the Board's decision that a POSITA would have "sought to combine Oba and Hara to arrive at a battery ground that is capacitively coupled to the circuit components of the laptop computer." Appx19.

"[E]vidence of a motivation to combine need *not* be found in the prior art references themselves, but rather may be found in 'the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved.' When not from the prior art references, the 'evidence' of motive will likely consist of an *explanation* of the well-known principle or problem-solving strategy to be applied." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1366 (Fed. Cir. 2006) (quoting *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999)); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ"). As discussed, Dr. Baker explained why a POSITA would have been motivated to modify Oba to include a capacitor between its battery ground and the other claimed circuit components. After crediting Dr. Baker and properly recognizing that the modification to Oba need not solve the same standing specific standing wave problem identified in Hara, the Board correctly found that a POSITA would have sought to combine Oba and Hara to arrive at the claimed

capacitively-coupled battery ground limitation to achieve the benefits of mitigating noise.  Appx18-19.

Lynk's final argument that the Board "improperly pivoted" after the institution decision, Lynk Br. 29-30, is a red herring.  The Board found at the institution stage that there was a reasonable likelihood that Samsung would prevail, and that Lynk raised, at best, a potential disputed issue of material fact that it later found in favor of Samsung after trial.  Appx302; Appx19.  Thus, the Board's final decision is entirely consistent with its institution decision, which tracked Samsung's obviousness positions based on the smoothing aspects that Lynk never challenged at trial.  *Supra* § IIA.2; Appx452 ("[Lynk]'s silence on the above-noted smoothing aspects and its conclusory positions concerning *Hara*'s standing wave issues fail to rectify the potential 'disputed issue of material fact' identified by the Board in its favor.") (citing Appx302; Appx603-604).

### B.    The Board Correctly Found that the Modification of Oba in View of Hara Would Have Resulted in a Battery Ground Capacitively Coupled to the Claimed Components

Lynk contends that the Board failed to address the requirement that the battery ground be capacitively coupled to at least one of the recited components in 1(b)-1(e) of Claim 1 ("the data receiver," "the circuit," "the at least one LED," or the "semiconductor device").  Lynk Br. 30-31.  Quite the contrary.  The Board found that it would have been obvious to capacitively couple Oba's battery ground "to the

circuit components of the laptop computer," which, when read in context, includes one or more of the components mapped to those recited in claim limitations 1(b)-1(e). Appx18-19. Indeed, it was undisputed below that Oba's circuit components are connected to a battery ground. Appx156; Appx451; Appx748-752 ¶¶ 24-30; Appx851-857 ¶ 102. Nor does Lynk dispute on appeal that the Oba laptop, including as modified at least in light of Sato and Gillespie, discloses the claimed "at least one LED" (limitation 1(b)), "semiconductor device configured to emit a laser" (limitation 1(c)), "data receiver including an antenna" (limitation 1(d)), and "a circuit configured to detect human touch via capacitive sensing" (limitation 1(e)). *See* Appx146-155; Appx14-16; *see also* Lynk Br. 3-4.[10] Once the Board determined that it would have been obvious to make Oba's battery ground capacitively coupled to Oba's laptop circuit components, it logically follows that the claimed circuit components in the Oba laptop (including as modified in view of Sato and Gillespie) would be capacitively coupled to that ground like in Hara.

In its analysis of claim 1, the Board discussed how claim 1 requires "'a battery ground capacitively coupled to at least one of the data receiver, the circuit, the at least one LED, or the semiconductor device via a conductor.'" Appx16. The Board

---

[10] Lynk did not appeal the Board's finding that the Oba combination met the claimed LED (limitation 1(b)) and touch detection circuit (limitation 1(e)). *See* Appx19-23; Appx28-32. Lynk also did not dispute below (and does not do so on appeal) that the Oba combination discloses the claimed semiconductor device (limitation 1(c)) or data receiver (limitation 1(d)). *See* Appx14 (citing Appx148-151).

also recognized that Samsung contended a POSITA "would have sought to capacitively couple a battery ground of Oba to a data receiver, circuit, LED, or semiconductor device in view of the known benefits of using a capacitor between a ground and circuit components." Appx15 (citing Appx156). And the Board observed that Samsung's proposed motivation for capacitively coupling any of the four recited components to the battery ground included "promot[ing] the provision of smoothed (noise-reduced) power to those components." Appx16 (citing Appx156-157; Appx159). This is the benefit on which the Board primarily relied in finding limitation 1(f) obvious. Appx16; Appx18-19.

The Board explained that "Claim 1 requires 'a battery ground capacitively coupled to at least one of the data receiver, the circuit, the at least one LED, or the semiconductor device via a conductor,'" Appx16, and concluded that "Hara teaches or suggests capacitively coupling the battery ground and *the circuit components* of the laptop computer," Appx17 (emphasis added). And, in its analysis of the reasons to combine (discussed *supra* § II.A), the Board found that Samsung "persuasively explains why one of ordinary skill in the art would have sought to combine Oba and Hara to arrive at a battery ground that is capacitively coupled *to the circuit components* of the laptop computer." Appx19 (emphasis added). Thus, the Board's reference to "the circuit components" plainly includes the four circuit components that the Board repeatedly indicated it was analyzing.

35

Lynk also ignores the Board's explanation crediting Dr. Baker's unrebutted testimony that "capacitive coupling Oba's battery ground to the conductor connecting the battery poles and the circuit components of the laptop computer would 'smooth delivered power,' thereby 'facilitating a steady supply of power.'" Appx18 (citing Appx869-874 ¶¶ 104-106); *see also* Appx18 (citing Appx851-869; Appx875-876 ¶¶ 102-103, 108).  As Dr. Baker explained, those circuit components of Oba's laptop computer included "one or more (or all) of the data receiver (e.g., limitation 1(d)), touch circuit (limitation 1(e)), LED (limitation 1(b)), and/or the semiconductor device (limitation 1(c))."  Appx869-870 ¶ 104, *cited in* Appx18.[11]

### 1.     Substantial Evidence Supports the Finding that the Battery Ground Was Coupled to at Least One of the Components Required by Claim 1

Lynk's challenge to the Board's analysis ignores the careful step-by-step process by which the Board reached its conclusion that the prior art evidence disclosed the particular claimed components capacitively coupled to ground.  Lynk does not seriously contest that substantial evidence shows the "circuit components" of Oba's laptop are "coupled to a battery ground."  *See, e.g.*, Appx156; Appx851-

---

[11] The cited portions of Dr. Baker's testimony also demonstrates how a POSITA "would have been motivated to configure the *Oba-Sato-Gillespie* combined apparatus to implement *such features*" (i.e., "capacitively coupling a battery ground to at least one of *the above-described claim components* (as modified above in view of *Sato* and *Gillespie*)").  Appx851-857 ¶ 102; *see also* Appx857-869 ¶ 103; Appx17-18.

857 ¶ 102 ("*Oba*'s battery necessarily includes a battery *ground* because consistent with electronic circuits known at the time, *Oba*'s circuit components (including the battery) must include an electrical ground so that the circuit can have a reference node with respect to which the voltage of other nodes in the circuitry can be expressed.") (citations omitted); *see also* Appx457-458.    And as previously discussed, Hara further discloses "capacitively" coupling such laptop components to battery ground for filtering purposes, such as shown in Hara's figures 3 and 8 (reproduced below).    Appx16-17; Appx156-157; Appx457-458 (citing, *inter alia*, Appx801-804;  Appx857-869  ¶¶ 78-79,  103;  Appx8150-8152 ¶ 10;  Appx6262; Appx6264 (Figs. 3, 8)).    Those figures show capacitor 31 coupled between battery ground 32 and terminal 5 used to power notebook circuitry.    *See* Appx457-458 (citing  AppxAppx8150-8152 ¶ 10;  Appx6275 (4:41-57);  Appx6276 (5:20-33); Appx6262; Appx6264 (Figs. 3, 8)).

# FIG.3



# FIG.8



Thus, substantial evidence showed that in Hara, the laptop's circuitry (and corresponding components) is capacitively coupled to battery ground 32. Appx17. The Board properly read Oba *in view of Hara* to disclose a configuration in which Oba's components would similarly be capacitively coupled to battery ground. Appx19.

While Lynk complains that the Board did not dwell on *particular* components in Oba, Lynk Br. 36-39, such an explicit identification was unnecessary given that the asserted reference *combination* clearly discloses componentry including a data receiver, touch detection circuit, LED, and semiconductor device as claimed *and* the Board found it obvious to ground all such electrical components in the modified Oba laptop, *see* Appx19. Moreover, a POSITA would have had reason to modify the battery ground in Oba's laptop as modified in view of Sato and Gillespie so that the modified laptop's circuit components, including those mapped to limitations 1(b)-1(e), were capacitively coupled to the battery ground (like that disclosed by Hara), as discussed above. *See supra* (discussing such features in the Oba combination); *see also* Appx851-857 ¶ 102) ("While *Oba*'s battery provides power for components of personal computer 51, *Oba* does not expressly disclose capacitively coupling a battery ground to at least one of *the above-described claim components* (as modified above in view of *Sato* and *Gillespie*). However, in my opinion, a person of ordinary skill in the art would have been motivated to configure the *Oba-Sato-Gillespie*

combined apparatus to implement *such features*.") (emphasis added); Appx869-870

¶ 104 ("In view of *Hara* and the state of the art, a person of ordinary skill in the art

would have been motivated to implement a battery ground in the combined *Oba-*

*Sato-Gillespie* apparatus, which includes a battery, to be *capacitively coupled to one*

*or more (or all) of the data receiver (e.g., limitation 1(d)), touch circuit (limitation*

*1(e)), LED (limitation 1(b)), and/or the semiconductor device (limitation 1(c))*.")

(emphasis added).  It is uncontested on appeal that the circuit components in Oba's

laptop, as modified in view of *Sato* and *Gillespie*, include "the data receiver, the

circuit [to detect human touch], the at least one LED, [and] the semiconductor

device," as recited in claim limitations 1(b)-1(d).  Appx146-155; Appx14-16; *see*

*also* Lynk Br. 3-4.  Thus, those circuit components, just like all the others, would be

capacitively coupled to the battery ground in the modified Oba PC, as the Board

correctly found.  Appx17-19 (citing Appx851-876 ¶¶ 102-106, 108, Appx8143-8152

¶¶ 3-10).[12]

    As such, the evidence the Board relied upon demonstrated that (1) all of the

components of Oba's laptop, are connected to the battery ground, (2) all of Hara's

laptop circuits are capacitively connected to battery ground, and (3) a POSITA

would at the very least have been motivated to configure the modified Oba laptop

---

[12] Even if the Board's logic is not crystal clear, all that is required is that it can be
reasonably discerned.  *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359,
1365 (Fed. Cir. 2015).

(including components mapped to limitations 1(b)-1(e)) so that those components are capacitively connected to the laptop's battery ground to "predictably provide[] filtering (e.g., smoothing) of power delivered by Oba's battery."  Appx158; Appx851-857 ¶ 102; Appx15 (citing Appx156-159).  This is far from "conclusory arguments and evidence" (Lynk Br. 36), and is sufficient to uphold the Board's decision.

Contrary to Lynk's contention (Lynk Br. 33-36), the Board did not need to separately explain why each particular circuit component in the modified Oba notebook would have been capacitively coupled to battery ground.  As Dr. Baker explained, the claimed circuit components in the modified Oba notebook would have been so coupled for the same reason (e.g., to "'smooth delivered power,' thereby 'facilitating a steady supply of power'").  Appx18; *see also* Appx851-857; Appx869-870; Appx875-876 ¶¶ 102, 104, 108.

Moreover, the dispute Lynk squarely presented to the Board was whether it would have been obvious for the battery ground in Oba to be capacitively coupled to Oba's circuit components (i.e., *all* of the circuit components).  Appx382-388. Lynk did not make any particularized arguments related to the components recited in claim limitations 1(b)-1(d) as it does on appeal.  Lynk Br. 33-38.  Instead, on this point, Lynk simply argued Hara (and Sato, Gillespie) "does not disclose a battery ground being capacitively coupled to … *any*[/*a*] *circuit element*."  Appx388

(emphasis added).  On this point, Lynk is clearly wrong, which the Board recognized in finding Hara to disclose "a direct electrical connection between the negative or positive pole of the battery, the circuit components of the laptop computer, and the capacitor coupled to the battery ground."  Appx16-17 (citing Appx457-458; Appx156-157; Appx6261-6262; Appx6264 (Figs. 1, 3, 8); Appx6274 (1:52-67); Appx6276 (5:20-33)).  Lynk does not even dispute this finding on appeal.  Having resolved that dispute, the Board "was not required to address undisputed matters." *In re NuVasive, Inc.*, 841 F.3d 966, 974 (Fed. Cir. 2016).[13]

### 2.    The Board's Findings for Claim 1 Apply to Claims 7 and 14

Lynk's complaint against the Board's findings for claims 7 and 14 with respect to the battery ground features is misplaced given that Lynk itself never raised to the Board any specific arguments for these limitations beyond that presented for limitation 1(f).  Before the Board, Lynk relied exclusively on its arguments for limitation 1(f) for the capacitively-coupled battery ground features recited in limitations 7(f) and 14(e).  *See* Appx410 ("Limitation 14(e) is not met by Oba and Hara under the same reasoning provided above for limitation 1(f)."), Appx414 ("limitation 7(f) is not taught by Oba and Hara for the same reasons set forth for limitation 1(f)").  Lynk treated the capacitively-coupled battery ground dispute as a

---

[13] Contrary to Lynk's assertion, *TQ Delta* did not state that the "Board must provide articulated reasoning with rational underpinnings *showing all limitations are met*." Lynk Br. 32-33 (citing *TQ Delta*, 942 F.3d at 1359).

single question of whether it would have been obvious to capacitively couple one or more of the claimed circuit components in the modified Oba notebook to its battery ground. Lynk waived any other argument on limitations 7(f) and 14(f), and the Board cannot be faulted for failing to address an argument that was never presented. *See In re Google Tech.*, 980 F.3d at 863; *Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1066 (2018).[14]

Thus, substantial evidence supports the Board's findings as to the battery ground features recited in limitations 7(f) and 14(f).

## III.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE PRIOR ART DISCLOSES THE "PACKAGE" LIMITATION

Claim element 1(h) recites "wherein the at least one LED, the semiconductor device, the data receiver, the circuit, and the battery ground are contained within a package and connected to at least one circuit board within the package." Appx124 (28:25-28). Lynk's appeal as to this limitation focuses on a purported claim construction dispute, Lynk Br. 45-46; yet it never asked the Board to construe the term. Nor is Lynk's new founded claim construction argument consistent with positions it has taken in related district-court proceedings. Appx23-24; Appx160-161; Appx464-466. Lynk's arguments on appeal are largely waived, and in any

---

[14] Should this Court find that the Board did not sufficiently articulate its reasoning for claims 7 and 14 (which it did), a remand for the Board to further explain the basis for its decision is the proper remedy.

event, those that are not waived fail to set forth any basis for reversing the Board's decision as Lynk requests.

Lynk's only argument to the Board was that Samsung "fails to show that the prior art combination of Ground 1 [(Oba, as modified in view of Sato/Gillespie/Hara)] is an 'LED lighting device or system.'" Appx399. This one-sentence conclusory assertion was premised on the specification's recitation that a "package" relates specifically to "an *LED lighting device or system*." Appx399 (quoting Appx113 (5:46-50)). Thus, Lynk's implicit argument was that Oba's laptop is not an "LED lighting device or system," and, therefore, cannot be a "package." Lynk did not explain why Oba's laptop (as modified in view of Sato/Gillespie/Hara), with its "at least one LED," was not an LED lighting device or system, or how Oba otherwise fails to meet what it now contends to be the lexicography definition of "package" in the specification. Appx399-400; *see also* Appx160-161 (Samsung's petition explaining "such computer components [e.g., computer 51 with CPU 81] and those discussed for limitations 1(b)-1(e) would have been implemented within Oba's modified computer housing ('package')"); Appx146-147 (addressing limitation 1(b) and referencing analysis for claim 5 (LED touch pad or LED backlight touch screen)); Appx163-170 (addressing claim 5 as referenced for claim 1). Thus, Lynk's conclusory assertion was wholly unsupported by evidence or even argument. Lynk's new arguments presented for the first time

on appeal are thus waived. *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015). Regardless, Lynk has not identified any error that warrants reversing the Board.

In making its finding that the Oba combination disclosed a package, the Board did not depart from the specification's definition of a "package." Appx24. It looked to the specification and made a factual determination as to what types of components are within the scope of an "LED lighting device or system" in the context of the '697 patent. Appx24. The specification describes how "LED based lighting may be used for general lighting, specialty lighting, signs and decoration such as for Christmas tree lighting." Appx111 (2:8-11). Relying on that description, the Board concluded that "[t]he field of LED lighting systems is broad" and includes those categories. Appx24 (quoting Appx111 (2:8-11)). The Board then found that the Oba laptop (which indisputably has one or more LEDs among the other "claimed components [] for claim 1") was a similar type of device, making it a "package." Appx24. That is a factual determination, not a claim construction, and it is supported by substantial evidence (*e.g.*, the '697 patent specification, the teachings of the prior art, and Dr. Baker's unrebutted opinions). Appx24 (citing Appx160; Appx879-883 ¶¶ 110-113; Appx6602; Appx6666 (19:2-6, Fig. 7)).

There was also nothing improper in the Board pointing out Lynk's own district-court contentions, which assert a cell phone and watch are each a "package"

as claimed.  Appx24; Appx160; Appx464-465); Appx7821 ¶ 30; Appx8029 ¶ 125; Appx7917; Appx7936-7937; Appx7957; Appx8093; Appx8111-8112; Appx8129-8130; Appx8135-8137; Appx8386-8388; Appx8395; Appx8403-8404; Appx8432. Lynk does not even try to reconcile its contentions in the district-court litigation with its positions here.

## A.    Lynk's Newly-Crafted Arguments for the "Package" Limitation Are Waived

Lynk's primary argument is that the Board applied an erroneous claim construction for "package," and suggests this Court should apply *de novo* review on that basis.  Lynk Br. 42-45.  But Lynk never formally sought a construction or asked the Board to go outside the claims' plain meanings to construe the "package" term for purposes of the IPR proceeding.  Appx399-400.  In fact, Lynk expressly told the Board it was not seeking a construction of any terms.  Appx374; Appx8.  The Board, accordingly, did not construe the term "package" as Lynk incorrectly contends on appeal.  *See* Lynk Br. 44; Appx8.  Accordingly, Lynk's argument is waived.  *See Palo Alto Networks, Inc.*, 752 F. App'x at 1022; *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006).

Because this claim construction argument is waived, all of Lynk's arguments related to that construction also fail.  *MPH Techs. Oy*, 2022 WL 215129, at *4 (declining to address whether the Board's decision was unsupported by substantial evidence where arguments depended on waived claim construction arguments).  In

any event, the Board's decision is supported by substantial evidence. *See infra* § III.B.

What's more, no one even disputes that the definition in the specification applies to the meaning of "package." Lynk, Samsung, and the Board are all in agreement on that point. Lynk's argument hinges on the Board's reference to the "field" of LED lighting systems or devices set forth by the '697 patent in further support of its findings that Oba's laptop constitutes a "package" as claimed. Appx24. But the Board did not construe the term "package" as "encompassing 'the field of LED light systems'" as Lynk incorrectly asserts. Lynk Br. 33 n.13; *see also infra* § III.A.1. Instead, the Board made a factual determination that Oba's modified laptop (which includes the components mapped to limitations 1(b)-1(e)) disclosed an LED lighting system or device based on its similarity to the LED lighting systems and devices contemplated in the '697 patent. Appx24. As such, even if this Court finds that the Board should have expressly construed "package" in the way Lynk contends, it was a harmless error because the Board properly applied the same definition that Lynk seeks on appeal. *Compare* Lynk Br. 43, *with* Appx24.

Lynk's first quarrel is with the Board's use of the term "field" in assessing the types of LED lighting systems and devices that fall within the specification's broad definition of "package," which includes the phrase "an LED lighting device or system." Lynk Br. 44. This is a straw man argument that erroneously portrays the

Board's factual analysis as claim construction.  All the Board did was look to the specification and make a factual finding—which Lynk does not dispute except as a purported claim construction error—as to the types of devices or systems that may constitute an LED lighting device or system within the scope of the '697 patent. Appx24.   The  Board  observed  that  the  types  of  "LED  lighting  systems" contemplated was "broad, and includes 'general lighting, specialty lighting, signs, and decoration such as for Christmas tree lighting.'"  Appx24 (quoting Appx111 (2:8-11)).  Moreover, whether a light, a sign, decoration, or other device, having one or more LEDs is an LED lighting system or is a system in the "field" of LED lighting is a matter of semantics—not sufficient to convert a factual finding into a claim construction.

Lynk's second quarrel is that the Board looked to the specification's examples of "LED based lighting" to make its factual determination that Oba's laptop PC constitutes a "package."  Lynk Br. 44 (citing Appx24).[15]  But Lynk made no contrary arguments below, presented no contrary evidence, and even now on appeal does not explain how the exemplary "LED based lighting" systems cited by the Board, Appx24 (quoting Appx111 (2:8-11)), are somehow distinct from and not within the

---

[15] Lynk characterizes the Board as holding that "package" encompasses these LED based lighting systems, Lynk Br. 44, but the Board only found that "[t]he field of LED lighting systems is broad and includes" those types of LED based lighting systems or devices, Appx24.

scope of "an LED lighting device or system" in the context of "package" as discussed in the '697 patent specification, Appx113 (5:46-50).

The Board's decision is therefore based on articulated reasoning and supported by substantial evidence—including the specification of the '697 patent. Lynk presents no cognizable basis to disturb the Board's finding that Oba's laptop constitutes a "package," as recited in claims 1, 7, and 14.

### B. Substantial Evidence Supports the Board's Finding that Oba's Modified Laptop Is a "Package"

The Board's finding that Oba's modified laptop is a "package" is supported by substantial evidence. *See* Appx23-24. The Board found that Oba's laptop constitutes a "package," consistent with its factual determination that the field of "LED lighting systems" in context of the '697 patent broadly includes "general lighting, specialty lighting, signs, and decoration," which is consistent with Lynk's assertion in district court litigation that "a cell phone, tablet, and watch constitute a 'package,' as that term is used in the '697 patent." Appx24 (citing Appx7821 ¶ 30; Appx8093; Appx8111-8112; Appx8129-8130; Appx8135-8137; Appx464-465). The Board further found that "the circuit components of the laptop computer of Oba would have been coupled using a circuit board," which Lynk does not contest. Appx24.

The evidence showed that Oba's laptop has LED lamps (*e.g.*, power lamp PL, a battery lamp BL, and other LED lamps such as a message lamp ML) that illuminate

to signal certain operations.  Appx22-23 (citing Appx8); Appx146 (citing Appx818-819 ¶ 90; Appx6602 (19:14-18), Appx6607 (24:9-11), Appx6608 (25:6-10, 25:16-19)).



Appx818-819 ¶ 90 (annotating Appx6670 (Fig. 11)).  Those LED lamps are connected to a circuit board within the modified Oba laptop.  Appx880-883 ¶¶ 112-113 (providing uncontroverted testimony that it would have been obvious to connect the circuit components including the LED lamps to a circuit board).

The Board also considered Samsung's evidence supporting that it would have been obvious to modify Oba's laptop to provide an organic LED ("OLED") or LED backlight touch screen for its touch-pad in view of *Gillespie*, as an alternative basis for disclosing the "at least one LED" claim limitation 1(b).  Appx23; Appx146-147; Appx165 (citing Appx819; Appx887-903 ¶¶ 91, 118-128).  As modified, the Oba laptop with an OLED or LED backlight touch screen touch-pad also meets the

"package" limitation.   Appx903-904 ¶ 129.   The Board considered the parties'
evidence and related arguments, found Lynk's unpersuasive, and concluded that
Oba's LED indicator lights and the modified Oba's OLED touch display or LED
backlight touch display (in the Oba, Sato, Gillespie, Hara combination) teach or
suggest "'at least one LED', as well as every other limitation of independent
claim 1."  Appx22-23 (quoting Appx146-147; Appx165).

Thus, the Board concluded that Oba's laptop has at least one LED (the LED
indicator lights and, as modified, also the OLED/LED-backlit touch screen touch-
pad).  Appx14; Appx23.  Then it analyzed the specification and determined that an
"LED lighting device or system," as used in the definition of "package," is broad
and includes "general lighting, specialty lighting, signs, and decoration such as for
Christmas tree lighting" as explained in the '697 patent specification.   Appx24
(quoting Appx111 (2:8-11)).  Substantial evidence thus supports the Board's finding
that Oba's laptop, with its LEDs, is a "package," *e.g.*, a component in an LED
lighting device or system consistent with the LED lighting devices/systems
contemplated by the '697 patent.

Lynk has presented no evidence showing this finding to be erroneous.  Indeed,
in order to preserve its district court infringement positions that accuse the housing
of cell phones and smart watches of being packages, Lynk has still not articulated
how Oba's modified laptop is not an LED lighting device or system consistent with

the claimed "package" term. Lynk. Br. 46.[16] Lynk's complaints against the Board's explanation as to how such features are met ring hollow.

### 1. The Board's Analysis Was Sufficiently Articulated

Lynk contends that the Board's analysis "boils down to just two sentences directed at irrelevant documents," and thus the Board has not met its burden. Lynk Br. 47. Lynk's argument fails considering the only real argument Lynk presented on the "package" limitation was a single sentence following a recitation of the specification's discussion of the term. Appx399. Nonetheless, the Board's decision shows otherwise. Appx23-24.

Indeed, Lynk does not dispute the Board's determination that the modified Oba laptop discloses "at least one LED," or explain how that analysis is not relevant to the determination of whether that makes Oba an "LED lighting device or system." *See* Appx22-24 (discussing "at least one LED"); Appx23-24 (discussing "package"). From this complete discussion, the Board's path can be reasonably determined, *supra* § III.A, which is all that is needed. *Ariosa Diagnostics*, 805 F.3d at 1365.

---

[16] This is not a scenario where Samsung attempted to shift the burden of persuasion to Lynk. *See* Lynk Br. 45. Samsung met its burden by presenting evidence and argument demonstrating how the modified Oba laptop meets the features of limitation 1(h) (Appx160-161, Appx464-466), which the Board considered and found persuasive over Lynk's argument (Appx23-24), especially in light of Lynk's silence after being called out on its contradictory positions by Samsung during trial.

### 2.    Lynk's Infringement Contentions Are Additional Evidence Supporting the Board's Finding that Oba's Laptop Constitutes a "Package"

Before the Board, Lynk made no argument against considering its district court representations, including those from its complaint (Appx7812-7856), its answer (Appx7965-8031), or its infringement contentions (*see e.g.*, Appx7904-7912, Appx7913-7964, Appx8080-8088, Appx8089-8137, Appx8385-8432) as evidence of what Lynk itself considered to be a "package" within the scope of the claims.  *See* Appx399-400 (not addressing infringement contentions).  Samsung's evidence was undisputed, and Lynk's arguments to the contrary are waived.  *See Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1048 (Fed. Cir. 2019).

In particular, Samsung presented evidence demonstrating how its mappings of the claimed "package" term to Oba's laptop housing is consistent with how Lynk asserts that term against accused products in litigation.  *See* Appx464-466; Appx160 n.14; Appx7821 ¶ 30; Appx7986 ¶ 125; Appx7917; Appx7936-7937; Appx7957 (5, 24-25, 45); Appx8093; Appx8111-8112; Appx8129-8130; Appx8135-8137 (5, 23-24, 42, 47-49); Appx8178-8182; Appx8211; Appx8386-8388; Appx8432 (2-4, 48).  For example, Samsung's evidence showed that Lynk accused the Galaxy S21 Ultra smartphone of infringement, which *according to Lynk* has "various components [that] are all contained within its external housing (*i.e.*, a package)." Appx7821 ¶ 30; *see also* Appx8090-8093 (pointing to AMOLED display for the claimed "LED."  It

also showed that Lynk had mapped "an AMOLED [organic LED] display" in Samsung's accused phones, tablets, and watches to the "at least one LED"). *See, e.g.*, Appx8090-8093 (cell phone); Appx8127-8130 (tablet), Appx8135-8137 (watch); Appx24 ("Patent Owner asserts in the district court litigation that a call phone, tablet, and watch, constitute a 'package,' as that term is used in the '697 patent."). The evidence confirmed Lynk's stance that "the enclosure of the [accused] phone itself" is a "package" (Appx8387; Appx8395; Appx8403-8404 (3, 11, 19-20)) and that accused smartphones/watches with "capacitive touchscreen LED displays" are an "LED lighting system" (Appx8386-8388; Appx8432 (2-4, 48)). *See* Appx465 n.6.

| wherein the at least one LED, the semiconductor device, the data receiver, the circuit, and the battery ground are contained within a package and connected to at least one circuit board within the package. | *The Accused Instrumentalities' at least one LED, the semiconductor device, the circuit, and the battery ground are contained within a package and connected to at least one circuit board within the package.*<br><br>More specifically, the S21 Ultra 5G's at least one LED, the semiconductor device, the data receiver, the circuit, and the battery ground are contained within a package (the enclosure of the phone itself) and connected to at least one circuit board within the package, as is required for the various components to function as part of the single device. |
|---|---|

Appx8403.

Lynk had an opportunity to respond to this evidence, but chose to ignore it in its sur-reply and at the hearing, and certainly did not raise any of the arguments it now makes on appeal. Lynk Br. 46-49.[17] This was plainly done so as not to disturb

---

[17] Lynk did not object or attempt to exclude such evidence under the rules. *See* 37 C.F.R. §42.64.

its infringement case, but a patent claim is not a "nose of wax" to be twisted one way to find infringement and another way to preserve a patent's validity. *White v. Dunbar*, 119 U.S. 47, 51-52 (1886); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Google Tech.*, 980 F.3d at 864. Lynk cites no authority that the Board cannot look to its infringement contentions, especially in the manner done in this case, which was simply to confirm the consistency between the '697 patents discussion on the field of LED lighting and Lynk's assertions as to how the housing of a cell phone or watch is a "package." Appx24.

Tellingly, Lynk never once articulates how Oba's modified laptop with its "at least one LED" (which Lynk does not dispute is disclosed on appeal) is not an LED lighting device or "package," like the similar devices it accuses of infringement. *See* Lynk Br. 45-50. Instead, Lynk makes a new passing reference to accused smart phones having an LED "flashlight" to argue the Board improperly "lump[s]" devices with different features together. Lynk Br. 48-49. But Lynk does not inform how other pending accused devices (*e.g.*, smart watches) that are similarly mapped to the claimed "package" limitation is an "LED lighting device or device" any different from the modified Oba laptop, where there is no evidence such devices have that flashlight feature. Lynk Br. 48-49; *see also e.g.*, Appx7962-7964 (50-52); Appx8135-8137; Appx8388 ("Lynk accuses all Samsung Smart Watches with

capacitive touchscreen LED (including OLED) displays … of infringing … Claims 7 and 14 of the '697 Patent.").

Lynk tries to excuse the inconsistency between its position on infringement in the district court and its position on invalidity before the PTAB by focusing on the alleged "preliminary" nature of the contentions and their timing before construction of "package." Lynk Br. 17, 46. But Lynk maintained its infringement allegations against both cell phones *and watches* in its "final" district court infringement contentions. Appx464-466; Appx8387-8388. And, while Lynk now, for the first time, makes vague reference to the flashlight feature of cell phones, there is no evidence that Samsung's smart watches, which remain accused in the "final" contentions, have such features. Tellingly, despite the local patent rules permitting amendment of final contentions "upon a showing of good cause … *made promptly upon the discovery of the basis for the amendment*," N.D. Ill. L.R. 3.4 (emphasis added), Lynk never sought to withdraw those products from its final contentions following the Board's final decision containing the purported new claim construction, instead agreeing to a stay pending the appeals of the PTAB decisions. Lynk's continued assertions of infringement against the accused Samsung watches undermine its newly presented arguments that a flashlight feature on an accused cell phone isolates Lynk from any inconsistent position as to the "package" limitations.

The Board thus properly considered Samsung's unrebutted arguments and related evidence regarding Lynk's infringement positions, which are "consistent with the broad understanding of the field of 'LED lighting'" in context of the '697 patent. Appx24. The Board's decision as to the "package" limitation recited in claims 1, 7, and 14 (and their respective challenged dependent claims) should be affirmed.

## IV. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING AS TO THE FIRST TRANSMISSION CONDUCTOR LIMITATION

Claim 7 recites a "first transmission conductor configured to receive first power and first data." Appx124 (28:42-43). The Board found the Oba combination met this limitation for two independent reasons, either of which is alone sufficient to affirm the Board's decision: (1) Oba's laptop includes a USB interface that was known to be configured to receive power and data over a conductor consistent with that known in the art at the time (Appx42-44), and (2) a POSITA would have found it obvious to configure Oba's modified laptop to implement an interface configured to receive first power and data consistent with the features taught by Zhang (Appx44-47). The Board's findings are supported by substantial evidence and may not be reweighed on appeal. *In re Warsaw Orthopedic*, 832 F.3d at 1334.

Lynk also, for the first time, raises a belated claim construction argument on the USB-based argument. Lynk Br. 50-53. This argument is forfeited because Lynk

did not make any claim construction arguments before the Board. *See MPH Techs. Oy*, 2022 WL 215129, at *4.

### A. The Oba-Zhang Combination Provides an Independent Basis to Affirm the Board's Decision

The "transmission conductor" dispute can be wholly resolved by affirming the Board's determination that the Oba-Zhang combination renders that claim limitation obvious (Appx44-47), without needing to reach Lynk's other arguments related to claim construction and the USB interface. Relying on the record evidence, the Board found that Zhang discloses "using the power line to deliver both power and data is particularly advantageous," and as such "one of ordinary skill in the art would have seen a benefit to adding Zhang's single cord configuration in Oba." Appx45-46. Accordingly, the Board found it would have been "obvious to implement Zhang's single-cord embodiment in Oba and that this combination would result in 'a first transmission conductor configured to receive first power and first data,' as recited in claim 7." Appx46. This finding is supported by substantial evidence.

Lynk again uses a straw man, incorrectly summarizing the Board as finding that "a POSITA would modify Oba to include a Power Line Communications (PLC) connection pursuant to Zhang." Lynk Br. 58-59. It then uses this narrow framing to repackage the same factual arguments presented below to assert that the only benefits gleaned from Zhang would be in relation to "prior art PLC systems that implement a PLC device separate from the AC power supply so as to require

multiple cords," which Lynk contends are not applicable to Oba's PC.  Lynk Br. 59-60, 62.  However, Lynk does not directly address the Board's rationale, which is much more straightforward.  The Board recognized the benefits of Zhang's single power cord to transmit both power and data over using multiple cords (one for power and one for data), and found it would have been obvious to use a single transmission conductor in Oba (e.g., Oba's power cord) to receive both power and data instead of using multiple cords (e.g*.,* power supply 121, IEEE-1394 port, etc.).  Appx45-46; Appx6670 (Fig. 11); Appx202; Appx958 ¶ 176.[18]  The advantages of such a modification were apparent to the Board and support the Board's decision to find limitation 7(c) obvious over Oba in view of Zhang.  Appx45-47.

Beyond Oba's alleged lack of a PLC, Lynk's chief argument is that the modification would have involved additional hardware and wiring.  *See* Lynk Br. 61-62; Appx550.  But the Board also considered this argument and found it unpersuasive.

---

[18] For instance, the Board recognized that Oba discloses "multiple methods of communication data" and Zhang discloses a "method of using the power line to deliver both power and data [that] is particularly advantageous."  Appx45-46. Indeed, it is undisputed that Zhang teaches the benefit of using a single cord.  *See* Lynk Br. 60 (Zhang teaches benefit of requiring only a single main power cord), *id.* (not disputing that "Zhang exemplifies a laptop configuration to receive power and data over a single conductor as an alternative to conventional designs involving multiple conductors") (quoting Appx474).

Lynk represents that the Board merely "conclu[ded] that a POSITA would make the proposed modification because 'the single-cord embodiment of Zhang would [] *decrease the costs and complexity* of the [Oba] laptop computer.'" Lynk Br. 62 (citing Appx46) (emphasis added). But, the Board never stated what Lynk represents.[19] Rather, the Board found:

> As Patent Owner and Zhang both note, the single-cord embodiment of Zhang would *simultaneously decrease* the *costs of cables and of networking* the various devices, but *increase the costs and complexity of the laptop computer* by requiring the installation a DC/data modulator. Ex. 1072 ¶¶ 3, 8, 19 (noting that DC/data modulators 25 and 26 would add additional cost and complexity to both the PLC network system and to the computer).

Appx46. The Board went on to explain:

> But "[a] given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine." *General Electric Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1349, 1351 (Fed. Cir. 2020).

*Id.* And that "'the fact that the two disclosed apparatus would not be combined by businessmen for economic reasons is not the same as saying that it could not be done because skilled persons in the art felt that there was some technological

---

[19] Nor did the Board provide a finding at Appx44 as suggested by Lynk. *See* Lynk Br. 62 ("the Board found reason to modify Oba … because it would provide a 'reduce[d] wire count'") (citing Appx44). There, the Board pointed out Petitioner's rationale, which the Board recognized included reduction of wire count "and [to] provide an alternate mechanism for receiving such signals over a wired connection." Appx44-45 (citing Appx201; Appx958 ¶ 176).

incompatibility that prevented their combination.  Only the latter is telling on the issue of obviousness.'"  Appx46 (quoting *Orthopedic Equip.*, 702 F.2d at 1013).  Thus, the Board properly found unpersuasive Lynk's "general arguments about increased costs or complexity due to the combination" given the evident advantages of the modification in view of Zhang, especially where there is "no suggestion that there is any technological incompatibility" preventing the combination.  Appx46.

Lynk does not take on these findings or case law in its brief.  Lynk Br. 59-62.  Instead Lynk conflates the Board's rationale related to a reduced wire count (Zhang's single cord embodiment) connected to Oba's PC from the *outside*, with the need for additional new hardware including alleged additional wiring on the *inside*.  Lynk Br. 62.  But as discussed above, the Board already considered and found unpersuasive Lynk's factual arguments about added complexity inside Oba's PC.  Thus, Lynk has failed to demonstrate any error in the Board's determination that Claim 7 is unpatentable based on the combination of Oba and Zhang.

## B. The Board Properly Interpreted and Applied The "First Transmission Conductor" Features of Claim 7 to Find Oba's USB Interface Meets Limitation 7(c)

For the Board's alternate rationale for finding Claim 7 obvious, concerning Oba's USB ports, Lynk incorrectly attempts to frame the Board's discussion of the plain language of the "first transmission conductor" phrase in claim 7 as a claim construction issue.  Lynk Br. 50.  The Board did not construe that phrase, Lynk

agrees that neither party sought a construction of the term (*id.*), and thus there is no claim construction to review on appeal.

Should the Court consider Lynk's arguments, the issue is whether a "first transmission conductor *configured to receive* first power and first data" in claim 7 (Appx124 (28:42-43) (emphasis added)), must be "configured to receive" first power and first data as the claim recites, or must be "designed to receive" (or "actually receive," it is not clear which construction Lynk seeks) first power and first data as Lynk contends. Lynk Br. 52-53. The Board, agreeing with Samsung, found that the plain language of claim 7 "only requires that a first conductor be 'configured to receive' power and data." Appx44 (citing Appx478).[20]

Starting with the plain claim language, nothing about the term "configured to receive" suggests the first transmission conductors must "actually receive" power and data as Lynk contends. Lynk Br. 51-52. Such an interpretation would be inconsistent with the understanding that "apparatus claims cover what a device *is,* not what a device *does*." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990). It is also inconsistent with claim 7's recitation of a "data receiver." Appx479 ("Claim 7 does *not require* the data receiver to receive

---

[20] Lynk mistakenly contends that "[n]either party argued that the first conductor does not have to 'actually receive' first power and first data." Lynk Br. 52-53; Appx479.

first data from the first conductor, but rather can be alternatively configured to 'receive third data via an antenna.'") (citing Appx124 (28:47-50)).

Additionally, Lynk's reliance on the embodiments for Figures 37, 41, and 46-49 is both untimely and misplaced. Lynk Br. 52-53. Lynk never pointed the Board to the '697 patent specification to support a "construction" that the "first conductor is designed to received first power/first data" and is "not merely capable of" or "capable of being configured to" receive first power/first data. Lynk Br. 52-53; Appx414-425; Appx547-548.[21] Moreover, those cited Figures do not even describe a conductor that receives power and data, much less a conductor configured to do so as recited in limitation 7(c). The description of figure 37 merely states that "an alternating electric field is provided to a first transmission conductor by a signal generator 1102 and a second transmission conductor is provided by an antenna 1108" circuit (cropped from the figure in Lynk's brief), Appx120 (20:25-28), and describes a difference in DC potential between two sides of a directional circuit—a difference that may be used to sense proximity with impedance changes in the directional circuit, Appx120 (20:28-44). Figure 41 only discloses a directional

---

[21] Lynk does not cite any of its IPR briefing to support its position. And Lynk's reference to its expert's opinions, Lynk Br. 53 (citing Appx8827-8829 ¶¶51-52), actually shows how Lynk advocated to the Board that "Figure 37 illustrates an *antenna 1108* connected to transmission conductor 1 *for wirelessly receiving power and data*," Appx8827-8828 ¶51 (emphasis added), which is missing from Lynk's *cropped* version of Figure 37 in its brief. *Compare* Appx82 (Fig. 37), *with* Lynk Br. 52 (Fig. 37 (without antenna 1108)).

circuit with two conductors.  Appx85 (Fig. 41), Appx121 (21:9-24).  *See also* Appx121-122 (22:25-23:17) (describing Figures 46-49).  None of those figures shows a first transmission conductor actually receiving (or configured to receive) both power and data, or even such a conductor in a portable apparatus as claimed in claim 7.

Even under Lynk's erroneous and belated claim construction, the Board's findings show that Oba's USB ports still disclose a first transmission conductor that is "designed to receive" first power and first data.  *See, e.g.*, Lynk Br. 52; Appx43 ("If the device in which the USB interface is installed is connected to a 'host,' it would receive power over the USB interface.") (citing Appx951-954 ¶ 174; Appx6896-6897).

### C.    Substantial Evidence Supports the Board's Finding that Oba's USB Interfaces Were Known to be Configured to Receive Power and Data Over a Conductor

The Board applied the plain claim language ("configured to"), consistent with Samsung's evidence to conclude that "a USB interface, such as the USB interface of Oba, *was configured to* receive both power and data."  Appx44 (emphasis added).[22]  Substantial evidence supports the Board's finding that USB interfaces, such as Oba's USB interface, were known at the time to be configured to receive

---

[22] Contrary to Lynk's contention, the Board did not find the limitation at issue met by a USB interface "*being capable of <u>being configured</u>* to receive power and data." Lynk Br. 53 (emphasis added); Appx43-44.

power and data over a conductor, thus disclosing the claimed "first transmission conductor configured to receive first power and first data." Appx43. On appeal, Lynk only disputes whether Oba's USB interface was configured to (or "designed to") receive power. Lynk Br. 54.

The Board credited the opinion of Samsung's expert Dr. Baker, who testified that USB interfaces, such as Oba's, were known at the time to be configured to receive power and data over a conductor. Appx951-954 ¶ 174. His testimony was supported by state-of-art references including *Fischer* (Appx4012-4028) and the USB 2.0 Standard (Appx6852-7501). *Id.* Dr. Baker explained that the USB 2.0 standard describes how power is transmitted from the "host" device in a USB system to other devices. *See* Appx951-954 ¶ 174; Appx6896-6897 (17-18 (§§4.2.1-4.3.2)); Appx6964-6970; Appx6981.

**4.3.1 Power Distribution**

Each USB segment provides a limited amount of power over the cable. The host supplies power for use by USB devices that are directly connected. In addition, any USB device may have its own power supply. USB devices that rely totally on power from the cable are called bus-powered devices. In contrast, those that have an alternate source of power are called self-powered devices. A hub also supplies power for its connected USB devices. The architecture permits bus-powered hubs within certain constraints of topology that are discussed later in Chapter 11.

Appx6897 (18 (§ 4.3.1)). It was undisputed that Oba's PC 51 can connect to a desktop PC, which would act as a USB host for the laptop if connected through the USB interface. Appx43 (citing Appx478-479; Appx6663 (Fig. 4); Appx8574-8575 (106:17-107:7)). Lynk's suggestion that the Board's understanding in this regard is speculation ignores the evidence. *Id.*; Lynk Br. 57.

Dr. Baker also discussed *Fischer*, which further demonstrated a POSITA's knowledge that it was known that power and data flows in both directions from a USB interface/connector.    Appx951-954 ¶ 174 (citing Appx4012-4028).    For example, *Fischer* shows USB connector 54 in a mobile communication device, with arrows indicating bidirectional data and power flow to and from that connector.



Appx951-954 ¶ 174 (annotating Appx4013 (FIG. 1)).

Lynk mistakenly contends that the Board did not make a determination regarding *Fischer*.  Lynk Br. 58.  In discussing Samsung's contentions, the Board explained that Dr. Baker "provided multiple citations to prior art that indicate that a USB connection can be used to transfer both power and data," and noted that

66

Dr. Baker cited to *Fischer*. Appx42. A reasonable reading of that analysis compels the conclusion that the Board agreed that *Fischer* discloses that USB connections transfer both power and data. Lynk misses the point about *Fischer*'s teachings concerning known USB interfaces in focusing on whether it describes a mobile phone. Lynk Br. 58.

Lynk's footnote argument regarding expert testimony (Lynk Br. 55 n.20) is correct that the Board accorded no weight to Lynk's expert, but is incorrect in that the Board did explain why it found Samsung's positions (including Dr. Baker's testimony) "persuasive" over Lynk's counter-arguments (Appx42-44). The portion of the Board's decision Lynk cites shows the Board did consider the testimony of Lynk's expert, which is almost verbatim to Lynk's arguments in its Patent Owner Response also cited by the Board. Appx42 (citing Appx416; Appx422; Appx425; Appx8894-8895 ¶ 182); Appx416 (citing Appx8894-8895 ¶¶ 181-182). Unlike Dr. Baker, Lynk's expert offered a conclusory statement with no corroborating evidence. Appx8894-8895 ¶ 182. Thus, it was proper for the Board to not accord any weight to Lynk's expert.

Because substantial evidence supports the Board's findings, what Lynk really seeks is for this Court to reweigh the evidence, which is not permitted. *See In re Warsaw Orthopedic*, 832 F.3d at 1334.

## CONCLUSION

The Board's final written decision should be affirmed.

December 18, 2023                    Respectfully submitted,

                                    /s/ *Naveen Modi*
                                    Naveen Modi
                                    Joseph E. Palys
                                    Igor V. Timofeyev
                                    David M. Valente
                                    PAUL HASTINGS LLP
                                    2050 M Street, N.W.
                                    Washington, D.C.  20036
                                    (202) 551-1700

                                    *Counsel for Appellee Samsung*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing motion with the Clerk of the United States

Court of Appeals for the Federal Circuit via the CM/ECF system this 18th day of

December, and also served a copy on counsel of record via the CM/ECF system.


Date:  December 18, 2023　　　　By:　_/s/ Naveen Modi_

Naveen Modi
　　Paul Hastings LLP
　　2050 M Street, N.W.
　　Washington, D.C.  20036
　　Tel.: (202) 551-1700
　　Fax: (202) 551-1705
Email: naveenmodi@paulhastings.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 13,901 words.

Date: December 18, 2023          BY:    /s/ *Naveen Modi*
                                 Naveen Modi
                                 Paul Hastings LLP
                                 2050 M Street, N.W.
                                 Washington, D.C.  20036
                                 Tel.: (202) 551-1700
                                 Fax: (202) 551-1705